## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**GARY J. MARTINEZ**

     **Plaintiff,**

**v.**                        **No. 1:16-CV-00263-MCA-SCY**

**JASON C. BROWN, individually
and in his official capacity with the
Albuquerque Police Department;
CITY OF ALBUQUERQUE,
a municipal entity organized under
the laws of the STATE OF NEW MEXICO,
and its Subsidiary, the ALBUQUERQUE
POLICE DEPARTMENT,**

**Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion for Partial Summary Judgment Requesting Dismissal of Plaintiff's Claims Under the New Mexico Tort Claims Act (Counts IV, V, and VI) Against Defendant City of Albuquerque*, filed June 10, 2016. [Doc. 19]  This Court, has considered the *Motions*, the briefs, the relevant law, and is otherwise fully informed.  For the reasons that follow, the Court **GRANTS** Defendants' *Motion*.

**Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  An issue is "genuine" when the evidence before the Court is such that a reasonable jury could return

a verdict in favor of the nonmovant as to that issue.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-52 (1986).  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  *Id.* at 248.  Judgment is appropriate as a matter of law if the nonmovant has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

It is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).  Rather, the Court assumes the admissible evidence of the nonmovant to be true, resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant.  *Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999).

**Background**

On May 15, 2015, Plaintiff crashed his vehicle into the center median at an intersection in Albuquerque, New Mexico.  [Doc. 19 p. 2; Doc. 29 p. 1]  Albuquerque Police (APD) Officer Jason Brown, one of the Defendants in this matter, responded to the scene of the crash and arrested Defendant for driving under the influence of intoxicating liquor or drugs, a fourth offense; careless driving; and driving with a suspended license. [Doc. 19 ¶ 1; Doc. 19-1 p. 2-3]  After he was arrested, Plaintiff was given a breath alcohol test which showed a negative result for alcohol.  [Doc. 29 ¶ 4; Doc. 19-1 p. 3]

Officer Matt Trahan then conducted a "drug recognition investigation" to determine whether Plaintiff was under the influence of drugs.  [Doc. 19-1 p. 3, 13]  Officer Trahan concluded that Plaintiff was under the influence of a central nervous system stimulant that rendered him unable to safely operate a vehicle.  [Doc. 19-1 p. 3]  A blood technician drew a sample of Plaintiff's blood and sent it to the Scientific Laboratory Division (SLD) for testing.  [Doc. 19-1 p. 3, 13]

When Plaintiff was arrested, he had four or more prior convictions for DWI, he was on probation, and his driver's license was revoked.  [Doc. 19-1 p. 3]  The probation department issued a "no bond hold" as a result of which, Plaintiff remained in jail at the Metropolitan Detention Center. [Doc. 19-1 p. 3; Doc. 29 ¶ 5]

When SLD tested Plaintiff's blood sample, no drugs were detected.  [Doc. 19-1 p. 13]  Plaintiff was released from jail on July 14, 2015.  [Doc. 29 ¶ 5; 29-1 ¶ 8; Doc. 31 p. 5]  And, on July 23, 2015, the district attorney *nolle prosequied* the charges against Plaintiff on the ground that his blood test results revealed that he was not under the influence of drugs or alcohol at the time of his arrest.  [Doc. 29-3]

On September 21, 2015, Plaintiff sent a tort claims notice to the Risk Management Division of the City of Albuquerque.  [Doc. 19 ¶ 2; Doc. 19-2]  The notice advised the City that Plaintiff intended to pursue a lawsuit arising from his May 15, 2015, "false arrest." [Doc. 19-2]  In March, 2016, Plaintiff filed the present lawsuit.  [Doc. 1-1 p. 1] Plaintiff's *Complaint* included the following relevant claims:  Count IV: Negligence by the City of Albuquerque Under the New Mexico Tort Claims Act; Count V:  Claim for Deprivation of Rights, Privileges and Immunities Under the New Mexico Tort Claims

Act; and VI:  Denial of Due Process Under the New Mexico Tort Claims Act.  [Doc. 1-1 p. 5-7]  Each of these claims was premised on Officer Brown's conduct in arresting Plaintiff.  [Doc. 1-1 p. 5-8]

**Discussion**

In the present *Motion*, Defendants seek dismissal of Counts IV, V, and VI, on the ground that Plaintiff failed to give the City written notice of his tort claims as required by Section 41-4-16 of New Mexico Tort Claims Act (NMTCA).  Defendants *Motion* rests upon the following three undisputed facts:

1.  On May 15, 2015 Plaintiff was arrested by Defendant Jason Brown . . . for Driving under the Influence of Intoxicating Liquor or Drugs, Fourth Offense; Careless Driving; and Driving While License Suspended.

2.  On September 21, 2015, Plaintiff sent a tort claims notice to the City of Albuquerque . . . Risk Management Department and Mayor Richard J. Berry.

3.  The City of Albuquerque is a governmental entity as defined by the New Mexico Tort Claims Act.

[Doc. 19 ¶¶ 1-3]

**The NMTCA Notice Requirement**

Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality . . . or to the administrative head of any other local public body for claims against such local public body, within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

NMSA 1978, § 41-4-16(A) (1977).  The notice requirement operates as a statute of limitations, barring an action unless notice is provided within the ninety day time frame.

4

*Ferguson v. N.M. State Highway Comm'n.*, 1982-NMCA-180, ¶ 14; NMSA 1978 § 41-4-16(B) ("No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no other court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given[.]").  A single exception to the notice requirement exists—that is, where "the governmental entity had actual notice of the occurrence."  *Id.*

**Plaintiff's "Actual Notice" Argument**

The undisputed facts of this case illustrate that Plaintiff's tort claims notice was sent to the City more than four months after his arrest, which is the incident that gave rise to his tort claims.  Rather than concede that, having sent his notice too late, his tort claims against the City are barred, Plaintiff seeks through various rationales to circumvent the written notice requirement.  The first of these rationales is Plaintiff's argument that he was exempt from the written notice requirement because the City had "actual notice" of the circumstances giving rise to his tort claims.  [Doc. 29 p. 4-6]

"The standard for actual notice under Section 41-4-16(B)" is "that the state must be given notice of a likelihood that litigation may ensue[.]"  *Callaway v. N.M. Dep't of Corrections*, 1994-NMCA-049, ¶ 6.  The notice must "reasonably alert the state to the necessity of investigating the merits of the potential claim."  *Id.*  Standing alone, "actual notice of the occurrence of an accident or injury" does not satisfy this standard.  *Id.*

Plaintiff argues that through "the combination" of documents available to it, the City had actual notice of his potential tort claim.  [Doc. 29 p. 5]  In Plaintiff's view this effective "combination" includes:

 (1) the report of the arrest; (2) documents showing that the Plaintiff had been booked into MDC and remained there; (3) the results of the intoxilyzer showing a breath alcohol concentration of 00.00%; (4) the results of his blood draw showing a complete absence of drugs or metabolites and (5) the *nolle prosequi* showing that the charges against the Plaintiff were dismissed because he was not intoxicated when he was arrested—after he had been incarcerated for more than a month on those charges[.]

[Doc. 29 p. 5]  In support of this argument, Plaintiff cites *Lopez v. State*, 1996-NMSC-071; and *Callaway*, 1994-NMCA-049.

*Lopez* and *Callaway* exemplify the practical meaning of "actual notice" in Section 41-4-16(B).  Central to the analysis in *Lopez* was an incident in which the plaintiff fell and was injured in a courtroom at the Bernalillo County Metropolitan Court (Metro Court).  *Lopez*, 1996-NMSC-071, ¶ 1.  The undisputed facts showed that after the plaintiff's accident, the Metro Court building administrator prepared an accident report stating that the plaintiff had been transported to the hospital, and stating the date, time, and location of the plaintiff's accident, as well as the names and contact information of three witnesses.  *Id.* ¶ 5.  A Bernalillo County sheriff's deputy also investigated the plaintiff's accident and prepared a report.  *Id.* ¶ 4.  The deputy's report detailed the circumstances of the accident, and indicated that the plaintiff was incapacitated and transported to the hospital.  *Id.*  The Metro Court building administrator sent both reports to Risk Management, which is the agency that is under a duty to "compromise, adjust, settle and pay claims."  *Id.* ¶ 5.  The *Lopez* Court concluded that based on the known facts and circumstances, the Metro Court could reasonably have inferred that that the plaintiff might file a lawsuit, reasoning that, from its "actual notice of the occurrence" the

Metro Court had actual notice that it may be subject to a claim. *Id.* ¶¶ 15-16.

In *Callaway* the plaintiff, who was an inmate at the state penitentiary, filed a tort claim against the state after he was beaten by other inmates. *Callaway*, 1994-NMCA-049, ¶ 4. After the incident, the plaintiff's wife and his attorney took several actions that the *Callaway* court determined could be construed as actual notice of a potential tort claim. *Id.* ¶ 5-8. These actions included: a letter from the plaintiff's wife to the Department of Corrections requesting a summary of the plaintiff's medical records and information about the incident; a letter from the plaintiff's wife to the Governor's Office regarding the incident, which letter was forwarded by the Governor's Office to the Secretary of the Department of Corrections with instructions to "take whatever action" he deemed appropriate; correspondence between the Department of Corrections and the plaintiff initiated by the plaintiff's attorney in which the attorney requested an investigation into the incident; notes taken by the plaintiff's Department of Corrections caseworker indicating that the plaintiff and his wife had hired an attorney as a result of the incident; and evidence that the plaintiff's father may have informed the prison chaplain that the plaintiff intended to sue the state as a result of the incident. *Id.* ¶ 5. Taken together, the *Callaway* court concluded, these various communications could amount to actual notice of impending litigation. *Id.* ¶ 8.

In contrast to *Lopez* and *Callaway*, where the governmental entity knew of the injury *and* it had reasonable notice that litigation may ensue, New Mexico courts have consistently rejected the notion that the actual notice standard is satisfied by mere "notice of the occurrence of an accident or injury." *Callaway*, 1994-NMCA-049, ¶ 6; *Dutton v.*

*McKinley Cnty. Bd. of Comm'rs*, 1991-NMCA-130, ¶ 9 (stating that it is "firmly established that the notice required is not simply actual notice of the occurrence of an accident or injury but rather, actual notice that there exists a likelihood that litigation may ensue"). For example, the New Mexico Court of Appeals held that a medical resident's report to residency administrators that she was raped by a fellow resident did not provide "actual notice" of a potential lawsuit against UNM Hospital arising out of the alleged rape. *Herald v. Bd of Regents of the Univ. of N.M.*, 2015-NMCA-104, ¶¶ 48-51. Nor was the actual notice standard satisfied by a wrongful death plaintiff's report to "appropriate personnel" at a county housing authority that, as a result of the county's failure to install a smoke alarm and to maintain a chimney in a house that it subsidized, the plaintiff's daughter and grandchildren perished in a house fire. *Cobos v. Dona Ana Cnty. Hous. Auth.*, 1995-NMCA-132, ¶¶ 4, 13-14 ("Although the [c]ounty knew about the fire and its possible causes, the [d]efendants did not have actual notice that [the plaintiff] would bring a claim against the [c]ounty."), *rev'd in part on other grounds*, 1998-NMSC-049. Nor was the "actual notice" standard satisfied where a police report indicated that passengers in a car had been injured when a guardrail penetrated the length of the car, the highway department's foreman had a conversation with state police about the accident, and the highway department had "special knowledge" of the hazard of the particular type of guardrail at issue. *Powell v. N.M. State Highway & Transp. Dep't*, 1994-NMCA-035, ¶¶ 14-18 ("Even when these factors are considered jointly, there is no evidence that the [highway department] had notice that this particular accident was likely to result in litigation against the [d]epartment or that the [p]laintiff considered the

accident to be the [d]epartment's fault.").

In sum, a governmental entity's notice of an accident or injury no matter how egregious, does not constitute "actual notice" under Section 41-4-16(B) unless the governmental entity is also on notice that the plaintiff is contemplating litigation. Thus, in *Herald*, *Cobos*, and *Powell*, where the governmental entity knew of the incidents that eventually led to litigation; such knowledge did not constitute actual notice. In *Lopez* and *Callaway*, on the other hand, the governmental entities' knowledge of the litigation-causing incident *combined* with the knowledge that litigation would likely ensue satisfied the actual knowledge standard.

Turning again to the facts of this case, even giving Plaintiff the benefit of all doubt and assuming that "the combination" of documents that he relies on to establish "actual notice" was in the hands of City administrators, that fact would not satisfy the actual notice standard. Assuming that the City was aware that Plaintiff had been arrested and jailed for driving under the influence and that the results of his blood draw led to his eventual exoneration, the City was merely on notice of the incident itself. Nothing in the documents would reasonably have led the City to infer that Plaintiff was contemplating litigation as a result of his "wrongful" arrest. Therefore, as a matter of law, the City did not have actual notice of Plaintiff's tort claims.

**Plaintiff's Tolling Argument**

Plaintiff argues, in the alternative, that the ninety day notice requirement was tolled while he was in jail. [Doc. 29 p. 6-10] Plaintiff submits three theories by which he seeks to persuade the Court of his tolling argument.

9

First, Plaintiff argues that he was under a "legal disability" by virtue of his incarceration because he had no access to a legal library and therefore no way of learning about the ninety day notice requirement.  [Doc. 29 p. 6-7]  He argues, further, that the ninety days did not begin to run until he conferred with an attorney, at which point, armed with knowledge of the notice requirement, his "legal disability" presumably ended.  [Doc. 29 p. 7]

Plaintiff's ignorance of the law does not constitute a legal disability such that it effectively tolled the ninety day notice requirement. *Coslett v. Third St. Grocery*, 1994-NMCA-046, ¶ 24 (rejecting the argument that ignorance of one's legal rights tolls the statute of limitations; and reasoning that an "action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action"); s*ee Ferguson*, 1982-NMCA-180, ¶ 14 (stating that the Section 41-4-16(A) notice requirement is effectively a statute of limitations).   Plaintiff's argument to the contrary is not persuasive.

Secondly, Plaintiff argues that, under the discovery rule, the ninety day notice period did not commence until the charges against him were *nolle prosequied*.  [Doc. 29 p. 7-8]  Plaintiff reasons that the discovery rule tolled the notice requirement in this case because "Plaintiff did not know that the City was aware that he was not intoxicated when he was arrested until it filed the *nolle prosequi* on June 23, 2015[.]"  [Doc. 29 p. 8]  Plaintiff's argument misapprehends the discovery rule.

"The discovery rule provides that the cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists."

*Williams v. Stewart*, 2005-NMCA-061, ¶ 12; *see Montano v. Frezza*, 2015-NMCA-069, ¶ 38 (stating that the discovery rule applies to ninety day notice requirement); *rev'd on other grounds*, NO. S-1-SC-35214, NO. S-1-SC-35297, 2017 WL 962447 (N.M. Mar. 13, 2017).  The determinative date is that on which the plaintiff learns of his injury and its cause.  *Maestas v. Zager*, 2007-NMCA-003, ¶ 22.  Thus, it is the plaintiff's knowledge of his injury not, as Plaintiff implies here, the tortfeasor's knowledge of its wrongdoing that constitutes the operative "discovery" under the discovery rule.

Because Plaintiff was present and conscious during his arrest and concomitant interactions with the officers, he was immediately aware of the injury underlying his tort claims.  Accordingly, Plaintiff's discovery rule argument is not persuasive.[1]

Finally, Plaintiff argues that the ninety day notice period should be equitably tolled to account for the time that he was prevented from seeking counsel because he was in jail.  [Doc. 29 p. 9-11]  "Equitable tolling . . . operates to suspend the statute of limitations in situations where circumstances beyond a plaintiff's control prevented the plaintiff from filing in a timely manner."  *Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 7.

Assuming without deciding that Plaintiff was "prevented from seeking counsel" while he was in jail, his equitable tolling argument fails nonetheless.  Plaintiff was in jail for sixty days, from May 15, 2015 until July 14, 2015.  After he was released, Plaintiff

---

[1] To the extent that Plaintiff's "discovery rule" argument may be construed as an assertion that, until the charges against him were dismissed by the district attorney, Plaintiff had yet to discover that he was not driving under the influence of illegal drugs or alcohol and, by extension, that he was wrongfully arrested, the Court rejects this absurdity out of hand.

had thirty days within which to seek counsel and submit a timely tort claims notice.  His failure to do so cannot reasonably be attributed to Defendants.

**CONCLUSION**

For the foregoing reasons, *Defendants' Motion for Partial Summary Judgment Requesting Dismissal of Plaintiff's Claims Under the New Mexico Tort Claims Act (Counts IV, V, and VI) Against Defendant City of Albuquerque*, is **GRANTED**.

**SO ORDERED** this  21st day of March, 2017 in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
**Chief United States District Judge**