IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GARY J. MARTINEZ

    Plaintiff,

v.                                                         No. 1:16-CV-00263-MCA-SCY

JASON C. BROWN, individually
and in his official capacity with the
Albuquerque Police Department;
CITY OF ALBUQUERQUE,
a municipal entity organized under
the laws of the STATE OF NEW MEXICO,
and its Subsidiary, the ALBUQUERQUE
POLICE DEPARTMENT,

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion [for] Summary Judgment Based on Qualified Immunity*, filed August 29, 2016. [Doc. 37]  This Court has considered the *Motion*, the briefs, the relevant law, and is otherwise fully informed. For the reasons that follow, the Court **GRANTS** Defendants' *Motion*.

**Background**

The following facts are undisputed.  The events underlying this lawsuit were precipitated by a report to the Albuquerque Police Department that Plaintiff had crashed his vehicle into the center median at an intersection.  [Doc. 37 ¶¶ 1-2; Ex. C.] Albuquerque Police Officer Jerry Arnold was the first officer to arrive on the scene. [Doc. 37 ¶ 1; Ex. A-1]  Officer Arnold found Plaintiff sitting in the driver's seat of his vehicle with the door open.  [Doc. 37 ¶¶ 1-3; Doc. 37-1 ¶¶ 5-6]  When Officer Arnold

1

asked Plaintiff how much he had been drinking, Plaintiff replied "not much." [Doc. 37 ¶ 4; Ex. A-1] Later, Plaintiff told the officer that he had not been drinking and later still, he told the officer that the last time he had a drink was in the afternoon. [Id.] Plaintiff's answers to Officer Arnold's other questions were given in slurred speech, and were uncertain—for example Plaintiff said that he did not know where he was, and he stated that he was headed "nowhere." [Doc. 37 ¶ 5; Doc. 37-1 ¶¶ 9-10; Ex. A-1] After Plaintiff told Officer Arnold that he was not injured and that he did not need an ambulance, Officer Arnold informed the EMTs who had arrived on the scene that they were not needed. [Doc. 37 ¶ 6; Doc. 37-1 ¶ 11; Ex. A-1; see Doc. 44 p. 3, ¶ 3] Based upon his observations, which he construed as signs of impairment, Officer Arnold requested a DWI unit. [Doc. 37 ¶ 8; Doc. 37-1 ¶ 13]

Officer Jason Brown, one of the Defendants in this matter, responded to the request of a DWI unit. [Doc. 37 ¶ 10; Doc. 37-2 ¶ 4] When Officer Brown arrived, Plaintiff was standing outside of his vehicle speaking with Officer Arnold. [Doc. 37 ¶ 11; Doc. 37-2 ¶ 5] Officer Arnold told Officer Brown that Plaintiff was "probably intoxicated." [Doc. 44 ¶ 4; Ex. A-1] Officer Brown noticed an inoperable ignition interlock device on the driver's side floor of Plaintiff's vehicle. [Doc. 37 ¶ 11; Doc. 37-2 ¶ 6; Ex. B-1] When Officer Brown questioned Plaintiff, Plaintiff gave varying and conflicting answers in response to questions regarding his alcohol consumption—stating first that he had a beer in the afternoon and subsequently stating that he had a beer the previous day. [Doc. 37 ¶13; Doc. 37-2 ¶ 8; Ex. B-1] Plaintiff also gave conflicting answers regarding his intended destination—stating that he was going to work at city

hall, at the hospital, and at UNM.  [Doc. 37 ¶¶ 12, 16; Doc. 37-2 ¶ 11]

After conversing with Plaintiff, Officer Brown decided to administer field sobriety tests.  [Doc. 37 ¶ 14; Doc. 37-2 ¶¶ 7-9; Ex. B-1]  Before administering the tests, Officer Brown asked Plaintiff whether he had any medical conditions that would interfere with his ability to perform the tests.  [Doc. 37 ¶ 14; Doc. 37-2 ¶ 9; Ex. B-1]  Plaintiff denied having any such conditions.  [Doc. 37 ¶ 14; Doc. 37-2 ¶ 9; Ex. B-1]

Officer Brown administered five tests.  [Ex. B-1]  Although Plaintiff said that he understood the instructions for the tests, the officer had to repeat them several times.  [Doc. 37 ¶ 15; Doc. 37-2 ¶ 10; Ex. B-1]  And, ultimately, Plaintiff performed poorly on each test.  [Doc. 37 ¶ 17; Doc. 37-2 ¶ 12; Ex. B-1]

Officer Brown arrested Plaintiff and took him to the Prisoner Transport Center.  [Doc. 37 ¶ 18; Doc. 37-2 ¶ 14; Ex. B-1]  There, he gave Plaintiff a breath test which yielded a negative result for alcohol.  [Doc. 37 ¶ 19; Doc. 37-2 ¶ 14]  Officer Brown then requested that Officer Matt Trahan, a drug recognition expert (DRE), evaluate Plaintiff.  [Doc. 37 ¶ 20; Doc. 37-2 ¶ 15; Doc. 37-3]  Officer Trahan's "drug recognition investigation" led him to conclude that Plaintiff was under the influence of a central nervous system stimulant which rendered him unable to safely operate a motor vehicle.  [Doc. 37 ¶ 20; Doc. 37-2 ¶ 15; Doc. 37-3]

Officer Brown learned that Plaintiff, who had seven or more DWI convictions, had a revoked driver's license and was on probation.  [Doc. 37 ¶ 23; Doc. 37-2 ¶ 16; Doc. 37-4]  The Probation and Parole Division of the New Mexico Corrections Department issued an arrest order which prohibited Plaintiff from being released on a bond.  [Doc. 37 ¶¶ 22-

23; Doc. 37-4]  Facts regarding Plaintiff's detention, which are set forth in this Court's Memorandum Opinion and Order pertaining to *Defendants' Motion for Partial Summary Judgment Requesting Dismissal of Plaintiff's Claims Under the New Mexico Tort Claims Act (Counts IV, V, and VI) Against Defendant City of Albuquerque* (Doc. 19), are irrelevant to the issue of qualified immunity and are not repeated here.

Plaintiff filed a lawsuit claiming, among other things, that Officer Brown violated his Constitutional rights.  [Doc. 1-1]  Defendants' present *Motion* pertains to Count I, a Fourth Amendment based claim against Officer Brown of unreasonable search and seizure; Count II, a Fourth Amendment based § 1983 claim against Officer Brown of false arrest and false imprisonment; and Count III a § 1983 claim against the City for failure to train and supervise Officers Brown and Trahan.  Defendants argue that Officer Brown is entitled to qualified immunity, and, therefore, the derivative claim against the City fails as a matter of law.  [Doc. 37 p. 10-20]

**Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  An issue is "genuine" when the evidence before the Court is such that a reasonable jury could return a verdict in favor of the nonmovant as to that issue. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-52 (1986).  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  *Id.* at 248.  Judgment is appropriate as a matter of law if the nonmovant has failed to make an adequate showing on an essential element of

its case, as to which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

It is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Rather, the Court assumes the admissible evidence of the nonmovant to be true, resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999).

**Qualified Immunity**

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability[.]" *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (citation omitted). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tenorio v. Pitzer*, 802 F.3d 1160, 1163 (10th Cir. 2015).

When a defendant asserts qualified immunity, "[t]he plaintiff bears the burden of establishing both (1) that the defendant violated a constitutional right and (2) that the right [was] clearly established by the time of the violation." *Id.* at 1164.

**Count I**

Count I, of the *Complaint*, "Unreasonable Search and Seizure" arises from Officer Brown's actions surrounding, but not including, his arrest of Plaintiff.  Plaintiff claims that after Officer Brown "stopped Plaintiff for a routine traffic violation" he violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure by ordering Plaintiff out of the vehicle, detaining him "for an unreasonable amount of time[,]" "interrogat[ing]" him,  and searching and seizing his vehicle.  [Doc. 1-1 ¶¶ 24-33]

As a point of clarification, the Court notes that Plaintiff has not produced evidence supporting particular allegations in Count I, and further, that Plaintiff has abandoned those allegations in his *Response to Defendants' Motion for Summary Judgment Based on Qualified Immunity* (Doc. 44).  The abandoned allegations are that Officer *Brown* stopped Plaintiff for a routine traffic violation, that Officer *Brown* ordered Plaintiff out of the vehicle, interrogated Plaintiff, or conducted an unlawful search or seizure of Plaintiff's vehicle.  The lapel videos in this case show that it was Officer *Arnold* who first came upon Plaintiff's stopped vehicle and ordered Plaintiff out of his vehicle.  Furthermore, it is clear from Plaintiff's *Response* that Officer Brown's detention of Plaintiff to conduct field sobriety tests is the basis of Plaintiff's unlawful search or seizure claim.[1]  [Doc. 44 p. 5-8]   Accordingly, as to Count I, the Court focuses on whether Officer Brown is

---

[1] Furthermore, to the extent that Plaintiff intended to allege that Officer Brown unlawfully searched and seized Plaintiff's vehicle, Plaintiff's allegations fall below the pleading requirements of Federal Rule of Civil Procedure 8 as set forth in *Ashcroft v. Iqbal. Id.* 556 U.S. 662, 678 (2009) (stating that pleadings in a complaint must offer more than "labels and conclusions" or "naked assertions devoid of . . . factual enhancement").

entitled to qualified immunity for having detained Plaintiff in order to administer field sobriety tests.

"The Fourth Amendment protects individuals from unreasonable searches and seizures, including unreasonable investigatory stops or detentions." *U.S. v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (alteration omitted)).  An officer may subject a driver to a field sobriety test without violating the Fourth Amendment when the officer has a reasonable suspicion that the driver is intoxicated. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206 (10th Cir. 2008).  "Under the reasonable suspicion standard, a police officer must have a particularized and objective basis for suspecting . . . criminal activity."  *Id.*  "A reasonable suspicion analysis is based upon the totality of the circumstances, and officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them[.]" *Id.*

Here, Officer Arnold's observation of Plaintiff's single-vehicle crash, along with his observations of and conversations with Plaintiff led him to believe that Plaintiff was "probably intoxicated" which led him, in turn, to call a DWI unit.  When Officer Brown arrived in response to that call, Officer Arnold's suspicion that Plaintiff was intoxicated could reasonably contribute to the totality of circumstances from which Officer Brown formed his own reasonable suspicion to that effect. *See U.S. v. Luginbyhl*, 321 Fed.Appx. 780, 785 (10th Cir. 2009) ("Under the 'fellow officer' rule, law enforcement officers may pool their information and reasonable suspicion is to be determined on the basis of the collective knowledge of all the officers involved." (alterations omitted)).  In addition to

7

having communicated with Officer Arnold, Officer Brown observed a disabled ignition interlock device on the floor of Plaintiff's vehicle. Then, when Officer Brown questioned Plaintiff, Plaintiff gave conflicting answers about when he had last consumed alcohol. Further, although Plaintiff stated that he was going to work, he gave conflicting answers about *where* he worked. Viewed in totality, these circumstances justified Officer Brown's reasonable suspicion that Defendant was driving under the influence of an intoxicating substance, contrary to NMSA 1978, Section 66-8-102 (2010). *See Vondrak*, 535 F.3d at 1206 ("A reasonable suspicion analysis is based upon the totality of the circumstances[.]").

Indeed, reasonable suspicion of intoxicated driving as a ground for conducting field sobriety tests has been upheld under circumstances less compelling than those here. For example, in *Vondrak*, our Tenth Circuit Court of Appeals held that a driver's statement that he had "one beer three hours ago" provided the officer with reasonable suspicion sufficient to conduct field sobriety tests. *Vondrak*, 535 F.3d at 1207. As well, our Tenth Circuit has held that various forms of erratic driving, for example, weaving between lanes; swerving from a lane and straddling the center lane; and drifting onto the shoulder, provide reasonable suspicion of intoxicated driving. *Amundsen v. Jones*, 533 F.3d 1192, 1198-99 (10th Cir. 2008) (collecting cases). Under *Vondrak* and *Amundsen*, Plaintiff's single car crash into the center median or his admitted use of alcohol—albeit within an uncertain time frame, taken alone would have adequately supported Officer Brown's reasonable suspicion of intoxication. Here, considering the totality of the circumstances, Officer Brown's reasonable suspicion that Plaintiff was intoxicated

8

justified his decision to detain Plaintiff in order to conduct field sobriety tests.

Because an officer may subject a driver to a field sobriety test without violating the Fourth Amendment when the officer has a reasonable suspicion that the driver is intoxicated, *Vondrak,* 535 F.3d at 1206, Officer Brown is entitled to qualified immunity as to Count I.

**Count II**

Count II of the *Complaint*, "Deprivation of Civil Rights Under 42 U.S.C. 1983 False Arrest and False Imprisonment" stems from Officer Brown's arrest of Plaintiff, and Plaintiff's subsequent detention. [Doc. 1-1 ¶¶ 34-42] Plaintiff argues that Officer Brown lacked probable cause to arrest him, rendering the arrest unconstitutional. [Doc. 44 p. 5-9] *See Franklin v. Thompson*, 981 F.2d 1168 n. 3 (10th Cir. 1992) ("A claim of false arrest is premised on a lack of probable cause, a constitutional right under the Fourth Amendment."). Building on the premise that the arrest was unconstitutional, Plaintiff argues that Officer Brown is liable for his resultant allegedly unconstitutional prolonged detention. [Doc. 44 p. 9-10]

"When a warrantless arrest is the subject of a § 1983 action, the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff." *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). "Probable cause to arrest exists if[] the facts and circumstances within the officer's knowledge are sufficient to justify a prudent officer in believing the defendant committed or is committing an offense." *Id.* "[P]robable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, the validity of such an arrest is

9

not undermined by subsequent events in the suspects criminal prosecution, such as dismissal of the charges[.]" *Summers v. State of Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991) (citations omitted).

The totality of the circumstances confronting Officer Brown at the time that he arrested Plaintiff gave the officer probable cause make the arrest. Combined with the facts and circumstances that led Officer Brown to conduct the field sobriety tests, Plaintiff's poor performance on each of those tests could lead a prudent officer to believe that Plaintiff was intoxicated. *See U.S. v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011) (stating that poor performance on three field sobriety tests contributed to probable cause to arrest a driver for DUI); *Titus v. Ahlm*, 297 Fed.Appx. 796, 798 (10th Cir. 2008) (stating that poor performance on two field sobriety tests contributed to probable cause of DWI). Following Plaintiff's post-arrest breath test, Officer Trahan's "drug recognition investigation" led the officers to believe that a central nervous system stimulant, rather than alcohol was the source of Plaintiff's ostensible intoxication. *See Foote v. Utah*, 4 Fed.Appx. 687, 689 (10th Cir. 2001) (recognizing that a drug recognition expert's observations and tests, combined with other indicia of intoxication justify probable cause for an arrest). Thus, although his suspicion shifted from alcohol to drugs, based upon the facts circumstances at the time, Officer Brown reasonably suspected that Plaintiff had been driving under the influence of an intoxicating substance. *See Summers*, 927 F.2d at 1166 (stating that probable cause is gauged by the facts and circumstances within the officer's knowledge at the time of the arrest).

Relying on *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012), for the

proposition that "defendants are liable for the harm proximately caused by their conduct[,]" Plaintiff argues that Officer Brown is liable for his prolonged unconstitutional detention.  [Doc. 44 p. 9]  In *Martinez*, our Tenth Circuit held that members of a police task force who had, without reasonable suspicion or probable cause to do so, arrested two men (the plaintiffs) could be held liable for the subsequent prolonged detention of the plaintiffs.  *Id.* at 1253-56.  The *Martinez* court reasoned that the "initial illegal detention and transfer of custody was the but-for cause of [the] [p]laintiffs' further detention[.]"  *Id.* at 1255.  Because it could reasonably be inferred that the defendants "knew or should have known [that] their illegal seizure and transfer of custody would result in [the] [p]laintiffs' prolonged detention after the transfer of custody" a jury could find the defendants liable for the detention.  *Id.* at 1256.

Plaintiff's reliance on *Martinez* is unavailing.  Unlike the task force defendants in *Martinez*, Officer Brown did not perpetrate an unlawful seizure.  Officer Brown's decision to arrest Plaintiff was founded upon his reasonable suspicion that Plaintiff had committed the crime of driving under the influence of an intoxicating substance, contrary to NMSA 1978, Section 66-8-102 (2010).  Plaintiff's subsequent detention was not caused by an illegal act by Officer Brown.  Since Officer Brown's decision to arrest Plaintiff was supported by probable cause, he is entitled to qualified immunity as to Count II of the *Complaint*.

**Count III**

Count III of the Complaint, titled "42 U.S.C. § 1983 Claim against City of Albuquerque:  Municipal Liability (Failure to Train and Supervise)," rests upon the

theory that the City's failure to train and supervise Officers Brown and Trahan led to Plaintiff's unconstitutional arrest and detention. [Doc. 1-1 ¶¶ 43-48] Our Tenth Circuit "will not hold a municipality liable for constitutional violations when there was no underlying constitutional violation by any of its officers." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (alterations omitted). Here, the *Complaint* does not include allegations or claims to support the notion, raised only in Count III, that Officer Trahan violated Plaintiff's constitutional rights. *See Ashcroft*, 556 U.S. at 678 (stating that "naked assertions devoid of . . . factual enhancement" do not suffice to state a claim). And, as set forth in the preceding portions of this Opinion, Officer Brown's actions in regard to Plaintiff were not unconstitutional. Accordingly, Count III shall be dismissed pursuant to the principle stated in *Olsen*. *Id.*

**CONCLUSION**

For the reasons stated herein, *Defendants' Motion [for] Summary Judgment Based on Qualified Immunity*, (Doc. 37), is **GRANTED**.

**SO ORDERED** this 21st day of March, 2017, in Albuquerque New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief United States District Judge**